# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| AMERICAN SPIRIT AND CHEER ESSENTIALS, INC., ROCKSTAR CHAMPIONSHIPS, LLC, JEFF & CRAIG CHEER, LLC, d/b/a JEFF AND CRAIG CAMPS, and ASHLEY HAYGOOD, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>VARSITY BRANDS, LLC, BSN SPORTS, LLC, VARSITY SPIRIT, LLC, STANBURY, LLC, HERFF JONES, LLC, BAIN CAPITAL, LP, CHARLESBANK CAPITAL PARTNERS, LLC, VARSITY BRANDS HOLDING CO., INC., VARSITY SPIRIT FASHION & SUPPLIES, LLC, U.S. ALL STAR FEDERATION, INC., USA FEDERATION FOR SPORT CHEERLEADING, d/b/a USA CHEER, VARSITY INTROPIA TOURS, LLC and JEFF WEBB,<br><br>Defendants. | Civ. Action No. 1:20-cv-03088 |

**DECLARATION OF STEVE PETERSON IN SUPPORT OF DEFENDANTS' JOINT MOTION TO TRANSFER ACTION TO THE WESTERN DISTRICT OF TENNESSEE**

I, Steve Peterson, declare as follows:

1. I am Vice President of the U.S. All Star Federation, Inc. ("USASF"), which is headquartered in Memphis, Tennessee. I am a resident of Memphis, Tennessee.

2. I have reviewed Plaintiffs' Complaint in the above-referenced action, which I understand names USASF as a defendant.

3. Based on the allegations in the Plaintiffs' Complaint, I expect that for the most part the books and records of USASF that may be relevant in this case are located in Memphis, Tennessee at USASF's office and none are located in Georgia. Likewise, none of the apparently relevant employees reside in Georgia.

4. In Memphis, Tennessee, USASF evaluates and decides whether companies—including independent event producers and gyms—should be approved to conduct USASF-sanctioned cheerleading and dance competitions. Such companies enter into agreements with USASF pursuant to which they agree to comply with USASF's rules applicable to USASF-sanctioned events. These agreements are prepared and entered into by USASF in Tennessee. As part of these agreements, all parties agree to litigate any disputes relating to the agreement in Shelby County, Tennessee.

5. Plaintiff Rockstar Championships, LLC, has entered into such an agreement with USASF, which is attached as Exhibit A.

6. In addition, Celebrity Cheer & Dance Championship, a cheerleading event producer, executed an identical forum selection agreement with USASF, listing Heidi Weber as its President.

7. All independent event producers who have sponsored USASF-sanctioned events have entered into similar forum-selection agreements with USASF.

8. None of the competitions identified in the Complaints as Worlds, The Summit, or U.S. Finals are conducted in the Northern District of Georgia.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on September 4th, 2020.

Steve Peterson

# EXHIBIT A

# United States All Star Federation
## Event Producer Membership Application
### 2019-2020 Term



**Company Name:** Rockstar Championships LLC

**Street Address:** 1312 N.W. 189th

**City:** Edmond **State:** OK **Zip:** 73012

**Contact Name (Representing your company):** David Owens **Title:** Employee

**Work Phone Number:** 855-723-2247 **Work Fax Number:** 855-723-2247

**Contact's Phone Number:** 405-550-5580 **Ext.:** **Contact's Cell Phone Number:** 405-550-5580

**Contact's Email Address:** david@rockstarchampionships.com **Company's Web Site Address:** rockstarchampionships.com

**Company's Services/Products** (check all that apply)
- ☐ Apparel / Accessories
- ☐ Instructional Camps
- ☒ Competitions

**Corporate Designation**
- ☐ Corporation
- ☐ Partnership
- ☐ Sole Proprietorship
- ☒ LLC
- ☐ LLP
- ☐ Other _____

**Company's Officers**

| Name | Title |
|---|---|
| Peggy Owens | President |
| Kristin Owens | VP |
| | |

**Membership Tier** (please select one)  Note: Membership Term May 1, 2019 - April 30, 2020.
- ☒ Tier Three ($2,000 per yr)
- ☐ Tier Four ($100 per yr)

**USASF Membership Standards of Agreement**

_____ is in agreement with (1) the mission of the USASF, (2) following the USASF Cheer and o
(Company Name)
Dance Safety Rules and Age Grids at all events, (3) following USASF Sanctioning Standards at all USASF Sanctioned events (4) the terms and conditions of the Membership Tiers and the attached USASF Company Member Agreement, which has been executed by Company and will be executed by USASF if this Membership Application is approved.

**Signature:** [signed] **Date:** 09/03/19

USASF
8275 Tournament Dr.
Suite 325

# USASF COMPANY MEMBER AGREEMENT

This USASF Company Member Agreement ("Agreement"), effective this 1st day of May, 2019, between U. S. All Star Federation, Inc., a corporation organized and existing under the Tennessee Nonprofit Business Corporation Act, having its principal offices at 8275 Tournament Drive, Suite 325, Memphis, Tennessee 38125 (hereinafter "USASF"), and Rockstar Championships LLC, having its principal offices at 1312 NW 189th St., Edmond, OK 73012 (hereinafter "Company").

WHEREAS, USASF was established for nonprofit purposes including, but not limited to, establishing rules for sanctioning and providing governance for cheerleading, dance and spirit related competitions and events; and

WHEREAS, Company produces cheerleading activities and events, and is a Tier 3 member of USASF;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree hereto as follows:

1. The term of this Agreement shall be for a one year period, commencing May 1, 2019, and terminating April 30, 2020 (the "Term").

2. Company agrees to observe and enforce the U.S. All Star Federation Cheer and Dance Safety Rules, Age Grids, Cheer Levels and Dance Divisions & Categories in all USASF Sanctioned divisions for cheerleading, dance and spirit-related competitions and events.

   a. Company understands that the U.S. All Star Federation Cheer and Dance Safety Rules, Glossary and associated Age Grids (collectively the "USASF Rules Documents") are copyright protected and may not be revised or disseminated to non-USASF members without prior written permission from the USASF.

   b. Company will direct their customers to log into their USASF member profiles for access to the Rules documents. Event Producers may not post current or past rules documents on their websites, in social media, or otherwise make them available to non-USASF members.

   c. Company may not use the USASF Rules Documents in-part or in-totality in any non-USASF division without prior written permission from the USASF.

3. Company, and it's employees, agree to the terms and conditions of the USASF Professional Responsibility Code.

4. Company agrees that all competitions sponsored or conducted by Company or its Affiliates that include "All Star" cheer and/or dance divisions/categories shall be sanctioned by USASF and meet USASF Sanctioning Standards. USASF reserves the right to review all such competitions for compliance with these standards. The term Affiliates as used herein means all other individuals, partnerships, firms, corporations, limited liability companies, joint ventures, associations, trusts, unincorporated organizations, or other entities that directly or indirectly control, are controlled by, or are under common control with Company. Company shall cause all such Affiliates to enter into separate Company Member Agreements with USASF.

5. Upon request the Company will assist the USASF in verifying team rosters for any or all team they awarded bids. Company agrees to respond back to such request, by email or fax, with confirmation that athletes are eligible or ineligible.

6. Company agrees to follow the USASF Sanctioned Event & Warm Up Requirements and Post Event Closeout Requirements as written in the Member Event Producers' Guide for Event Compliance.

7. During the Term, Company agrees that it shall not produce, or recruit teams for a cheerleading or dance "World" championship event, or participate in, or sponsor a cheerleading or dance "World" championship event conducted by a third party.

8. Company agrees to follow all Levels 5 and 6 guidelines as they relate to "end of season, multi-brand events" and to observe the following restrictions:

    a. Maintain the current restrictions regarding how the "year end multi-brand events" are marketed. Phrases such as "world champion" are strictly prohibited.
    b. Restrict teams that compete at The Worlds from competing at any "year end multi-brand events."
    c. Not allow any "year end multi-brand events" on The Worlds weekend.

9. Company agrees to send at least one representative to a USASF Rules Interpretation Meeting and Safety Official (Meeting or Webinar) as well as the Tier Membership Meeting or Webinar held annually. Noncompliance with either of these requirements will result in a $1000 fine per occurrence and revocation of voting privileges during the 2019-2020 term.

10. Company agrees to observe the moral and behavior standards of USASF.

11. Sublicense Agreement.

    a. The parties acknowledge and agree that USASF (hereinafter "Sublicensor") is the owner of the mark U.S. ALL STAR FEDERATION USASF (and design) and U.S. Registration No. 2,979,490 therefor and the mark USASF and US Application No.87/533,448 therefor.

    b. Sublicensor grants to Company (hereinafter "Sublicensee"), and Sublicensee accepts, an exclusive, nontransferable, royalty-free sublicense (without the right to sublicense further) to use the Mark throughout the United States for the purposes set forth in the Magazine Advertising Guidelines (Appendix A hereto), the Print Collateral Guidelines (Appendix B hereto), and the Federal Logo Usage Guidelines (Appendix C hereto).

    c. Sublicensee agrees that (a) all licensed use of the Mark by Sublicensee shall inure to the benefit of Sublicensor, and (b) it will assist Sublicensor in recording this Agreement with appropriate governmental authorities, if necessary, and pay any costs associated therewith. Sublicensee agrees that nothing in this sublicense shall give Sublicensee any right, title or interest in or to the Mark other than the right to use the Mark in accordance with this sublicense.

    d. Sublicensee agrees that the nature and quality of the Licensed Goods/Services shall conform to standards set by and shall be under the control of

Sublicensor and shall be in conformity with the Trademark Usage Guidelines attached hereto as Appendix D.

e.  Sublicensee agrees to cooperate with Sublicensor in facilitating Sublicensor's control of such nature and quality, permit reasonable inspection of Sublicensee's operation, and supply Sublicensor with specimens of use of the Marks upon request. Sublicensee shall comply with all applicable laws and regulations and obtain all appropriate government approvals pertaining to the sale, distribution and advertising of the Licensed Services.

f.  Sublicensee agrees to use the Marks only in the form and manner and with appropriate legends as approved by Sublicensor.

g.  Sublicensee agrees to notify Sublicensor of any unauthorized use of the Marks by others promptly as it comes to Sublicensee's attention. Sublicensor shall have the sole right and discretion to bring infringement or unfair competition proceedings involving the Marks.

h.  Unless sooner terminated as provided for herein, this sublicense shall continue in full force and effect for so long as the Agreement shall be in full force and effect.

i.  Upon termination or expiration of this Agreement Sublicensee agrees to (a) cease and desist immediately from all use of the Marks or any confusingly similar mark, (b) assign to Sublicensor any domain name registration which contains, or would likely be confused with, the Marks, and (c) change its corporate name to one that does not contain the Marks.

12. Company agrees to indemnify, defend, save and hold USASF harmless from any and all claims, demands, costs, damages, liabilities, losses or expenses, including reasonable attorneys' fees, arising out of actions brought by third parties against USASF as a result of the breach by Company of any material provision of this Agreement. Company further agrees to indemnify and hold USASF harmless from any third party liability resulting from the negligent or intentional acts or omissions of Company.

13. Company, at its expense, agrees to obtain and maintain in full force during the term of this Agreement or any renewal hereof insurance policies affording at least the following coverages:

(a)  Comprehensive general liability, including participant legal liability with a limit of One Million and No/100 ($1,000,000.00) Dollars per occurrence and a Two Million and No/100 ($2,000,000.00) Dollars aggregate limit;

(b) Automobile liability insurance, including hired and non-owned automobiles with a limit of One Million and No/100 ($1,000,000.00) Dollars per occurrence; and

(c) Such additional insurance as USASF may reasonably request from time to time.

Such insurance shall be obtained from a qualified insurance company licensed to do business in the jurisdiction in which Company is domiciled, with the above policies naming USASF as an additional insured. Said policies shall provide for ten (10) days notice to USASF from the insurer by registered or certified mail, return receipt requested, in the event of any modification, cancellation or termination thereof. Company agrees to furnish USASF a certificate of insurance evidencing said policies within thirty (30) days after execution of this Agreement.

14. Any waiver of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

15. In the event of material breach of the Agreement by either party, the nonbreaching party shall notify the breaching party in writing of the claimed breach of the Agreement. If the breaching party fails to cure the material breach within thirty (30) days of such written notification, the nonbreaching party shall have the right to terminate the Agreement immediately. If either party hereto files a petition in bankruptcy (not dismissed within thirty (30) days of filing) or is adjudicated as bankrupt or if a petition in bankruptcy is filed (not dismissed within thirty (30) days of filing) against either party or if either party becomes insolvent, or makes an arrangement pursuant to any bankruptcy law, or if either party discontinues its business or operations and its functions are not substantially continued through reorganization, redesign, renaming or similar kinds of changes, this Agreement shall automatically terminate forthwith without any notice whatsoever being necessary.

16. All provisions of this Agreement shall be severable and no provision shall be affected by the invalidity of any other provision to the extent that such invalidity does not also render such other provisions invalid. In the event of any invalidity of any provision of this Agreement, this Agreement shall be interpreted and enforced as if all provisions thereby rendered invalid were not contained herein. If any provision of this Agreement shall be susceptible of two interpretations, one of which would render the provision invalid and the other of which would cause the provision to be valid, such provision shall be deemed to have the meaning which would cause it to be valid.

17. The internal laws of the state of Tennessee, without regard to its conflicts of law principles, shall govern this Agreement, and any disputes hereunder shall be heard in the courts located in Shelby County, Tennessee.

18. All legal notices shall be addressed by certified, return receipt requested mail to the respective parties as follows:

```
U. S. All Star Federation, Inc.:
8275 Tournament Drive #325
Memphis, TN 38125
Attn: _____
Company: _____
        Rockstar Championships, LLC
        1312 NW 189th St.
        Edmond, OK 73012
Attn: David Owens
```

Any party hereto may change its address for the purpose of receiving notices, demands and other communications as herein provided by a written notice given in the manner aforesaid to the other party or parties hereto.

19. No amendment, change, modification or waiver of any provision hereof shall be valid unless written and signed by both parties to this Agreement.

20. The rights and obligations of the parties, which by their nature survive termination or completion of the Agreement including, but not limited to, those set forth in the provision entitled "Indemnification", shall remain in full force and effect.

21. Facsimiles and copies of this Agreement, including signatures, will have the same legal force as an executed original version of this Agreement. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which together will constitute one and the same document.

22. Neither party shall assign or delegate its obligations hereunder without the express prior written consent of the other party. Despite such consent, no assignment shall release the assignor of any of its obligations or alter any of its primary obligations to be performed under the Agreement.

23. This Agreement constitutes the complete Agreement between the parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous discussions, negotiations, understandings, commitments and agreements, whether written or oral, with respect to the subject matter hereof.

The parties have executed this Agreement as of the day and year first above written.

U. S. ALL STAR FEDERATION, INC.

By: _____

Date: 9/5/19

COMPANY

By: _____

Date: 9/3/2019

## USASF Tier 1 Worlds Qualifying Event Information 2018 - 2019

| Company Name | 2018-2019 Received Tier Level | 2019-2020 World's Qualifying Event Name | 2019-2020 World's Qualifying Event Name | City | State | 2019-2020 World's Qualifying Event Date | # of Years Same Event Has Existed (Include 18-19 seasons) | # of "All Star" Cheer Teams Performed At Same Event In 2018 - 2019 Season (Include finals/summits) | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Rockstar Championships | Tier 1 | Rockstar Championships | | | | | | | |
| Rockstar Championships A2 | Tier 2 | Cheer of Legends 2 - Kentucky | Cheerleader Getaway | KY | | 10/26/2020 | 18 | | |
| Rockstar Cheergeorgia | Tier 3 | Rockin the Rockies Cheerleader Getaway | Nationals/Wardan Carnesse | Denver | CO | 12/8/19 | 4 | 10 | |
| | Tier 3 | Battle of the Movies | WA America Center | Council Bluffs | IA | 4/5/20 | 4 | 60 | |