IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERICAN SPIRIT AND CHEER ESSENTIALS, INC.; ROCKSTAR CHAMPIONSHIPS, LLC; JEFF & CRAIG CHEER, LLC, d/b/a JEFF AND CRAIG CAMPS; and ASHLEY HAYGOOD, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. |
| VARSITY BRANDS, LLC; BSN SPORTS, LLC; VARSITY SPIRIT, LLC; STANBURY, LLC; HERFF JONES, LLC; BAIN CAPITAL, LP; CHARLESBANK CAPITAL PARTNERS, LLC; VARSITY BRANDS HOLDING CO., INC.; VARSITY SPIRIT FASHION & SUPPLIES, LLC; U.S. ALL STAR FEDERATION, INC.; USA FEDERATION FOR SPORT CHEERING, d/b/a USA CHEER; VARSITY INTROPIA TOURS, LLC; and JEFF WEBB, | No. 1:20-cv-03088-SCJ |
| Defendants. | |

## **ORDER**

This matter appears before the Court on the Joint Motion to Transfer Action to the Western District of Tennessee filed by the following Defendants: Varsity Brands, LLC ("Varsity Brands"); BSN Sports, LLC ("BSN Sports"); Varsity Spirit, LLC ("Varsity Spirit"); Stanbury, LLC ("Stanbury"); Herff Jones, LLC ("Herff Jones"); Bain Capital, LP ("Bain Capital"); Charlesbank Capital Partners, LLC ("Charlesbank Capital"); Varsity Brands Holding Co., Inc. ("VB Holding Co."); Varsity Spirit Fashion & Supplies, LLC ("VS Fashion & Supplies"); U.S. All Star Federation, Inc. ("USAF"); USA Federation for Sport Cheering, d/b/a USA Cheer ("USA Cheer")[1]; and Varsity Intropia Tours, LLC ("Intropia Tours") (collectively referred to as the "Moving Defendants").[2] Doc.

---

[1]  The Motion listed this party as "USA Federation for Sport ***Cheerleading***, d/b/a USA Cheer" (emphasis added). From a review of the filings, however, the Court understands that "Cheerleading" in the name should have been "Cheering."

[2]  Moving Defendants at least implicitly present this "joint" motion as though all Defendants have joined the filing. <u>See</u> Doc. No. [34-1], p. 6 (referring to the Moving Defendants simply as "Defendants"). The Court notes, however, that Defendant Jeff Webb did not join the Motion. Nor has he filed anything with the Court relating to this Motion. The Court does not know whether Moving Defendants omitted Mr. Webb accidentally, or if Mr. Webb simply chose to sit this one out. Either way, his apparent choice not to participate in these filings does not ultimately affect the Court's decision. While courts have in some cases disfavored transfer (<u>Azure Networks, LLC v. CSR plc</u>,

No. [34].³ Moving Defendants ask the Court to transfer this lawsuit—a putative class action alleging antitrust and other claims—to the United States District Court for the Western District of Tennessee, where a similar, consolidated case is pending and which encompasses Memphis, several Defendants' principal place of business. Plaintiffs oppose transfer and argue the case should remain with this Court because, among other things, the Court should afford weight to Plaintiffs' choice of forum, the convenience of the parties and witnesses weighs in favor of this forum, and the nucleus of facts took place in this forum.

_____

No. 6:11CV139 LED-JDL, 2012 WL 12841483, at *7 (E.D. Tex. June 25, 2012), adopted, No. 6:11CV139 LED-JDL, 2012 WL 12843207 (E.D. Tex. Sept. 27, 2012)) or severed actions (Inline Connection Corp. v. Verizon Internet Servs., Inc., 402 F. Supp. 2d 695, 703 (E.D. Va. 2005)) when not all defendants joined a motion to transfer, other courts have decided that transferring the entire action would be fair as long as the silent defendants had time to respond and did not object to transfer (see Cont'l Auto. Sys., Inc. v. Avanci, LLC, No. 19-CV-02520-LHK, 2019 WL 6735604, at *8 (N.D. Cal. Dec. 11, 2019)). Here, Mr. Webb resides in Memphis and has been significantly involved in the business operations of other Defendants. The Court has no reason to believe Mr. Webb would want his sliver of the case severed and kept here, nor does it think doing so would be wise. In the exercise of its discretion under 28 U.S.C. § 1404(a), the Court will not give weight to Mr. Webb's silence on this matter. See Bd. of Trustees of Health & Welfare Dep't of Const. & Gen. Laborers' Dist. Counsel of Chicago & Vicinity v. Kruzan, No. 11CV03233, 2011 WL 6140530, at *7 (N.D. Ill. Dec. 8, 2011) (transferring case *sua sponte* to the extent one defendant did not specifically join another defendant's motion to transfer). Whether the case stays or goes, Mr. Webb shall so stay or go.

³ All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

3

For the reasons stated in this Order, the Motion is **GRANTED**.

## I.   BACKGROUND

This matter is a putative class action lawsuit alleging antitrust and other claims. All parties to the case operate in or adjacent to the competitive cheer market—selling apparel, organizing cheer competitions, and engaging in other interscholastic enterprises that interlace with competitive cheer. Over the past several months, different plaintiffs have brought similar lawsuits against several Defendants in three other federal district courts. All those cases have now made their way to the Western District of Tennessee.

This case thus involves two strands of facts that are equally important to the Court's analysis: the alleged factual background and the procedural background of this case and the related lawsuits. The Court turns to those now.

### A.   The Factual Background

The Court draws primarily from Plaintiffs' Complaint to provide the relevant factual background. Defendant Varsity Brands is a Delaware entity with its principal place of business in Memphis, Tennessee. Doc. No. [1], p. 11, ¶9.[4]

---

[4] Varsity Brands is the parent company of Defendants Varsity Spirit, BSN Sports, Herff Jones, Intropia Tours, and Stanbury.

4

Defendant Jeff Webb founded Varsity Brands in 1974 after working for several years in the competitive cheer industry. See id. at 19, 21, ¶¶25–26, 36. Since then, Varsity Brands and its subsidiaries have expanded, acquired related and competitor entities, established numerous competition levels and events, and successfully captured a significant share of the competitive cheer and adjacent markets. See id. at 11–14, 19–48, ¶¶9–13, 26–162.[5]

Plaintiffs also name several Defendants that allegedly "engaged in the market activity of" Varsity Brands and its subsidiaries.[6] See id. at 14–15, 17–18, ¶¶14–16, 21. Plaintiffs further name other Defendants that sell cheer apparel or facilitate competitive cheer events. See id. at 15–17 ¶¶17–20.

In all, at least six (6) out of the thirteen (13) Defendants reside or have their principal place of business located in or near Memphis, Tennessee. See Doc. No. [43], pp. 22–23.[7]

_____

[5] Those adjacent markets allegedly include manufacturing, distributing, and selling athletic apparel and team gear for multiple interscholastic sports (including cheering), marching band uniforms and shoes, class rings, yearbooks, graduation regalia, and school image branding and construction. Doc. No. [1], p. 12, ¶9.

[6] Those Defendants are Bain Capital, Charlesbank Capital, VB Holding Co., and Jeff Webb.

[7] According to Plaintiffs' Complaint, that number would be seven (7). See Doc. No. [1], pp. 11–18, ¶¶9–21. But in their response to the present Motion, Plaintiffs changed their

Plaintiffs are three corporate entities and an individual. Doc. No. [1], pp. 9–11, ¶¶5–8. Each Plaintiff entity is incorporated and has its principal place of business in Oklahoma. Id. at 9–10, ¶¶5–7. These Plaintiffs operate in the competitive cheer market and claim to be injured by Defendants' actions. See id. Plaintiff Ashley Haygood is a natural person residing in Georgia. Id. at 11, ¶8. Ms. Haygood, a competitive cheer parent, allegedly paid Defendants inflated prices for her child's participation in competitive cheer events. See id. Ms. Haygood thus claims she has suffered economic harm and damages as a result of Defendants' allegedly unlawful conduct. Id.

Specifically, Plaintiffs allege that Defendants have unlawfully monopolized the competitive cheer market by acquiring or snuffing out competitors, controlling or unduly influencing the sport's governing bodies, crafting the sport's uniform rules to their commercial advantage, forcing athletes

---

understanding of the principal places of business for two Defendants: USAF (Dallas, Texas) and Intropia Tours (Southaven, Mississippi). Reading these facts in favor of the non-moving party, the Court accepts this updated accounting of headquarters. But the Court notes that Southaven, Mississippi is directly across the state line from Memphis. Because the Court is considering primarily witness and trial convenience factors in this transfer analysis, a separation by state lines is not critical here as it would be in a jurisdictional analysis. The Court thus finds that at least six (6) Defendants reside or have their principal place of business *in or near* the Western District of Tennessee.

and teams to participate only in Defendants' events, and otherwise exploiting their control of the market to the detriment of market participants and competitors. See id. at 92–96, ¶¶240–43.

Plaintiffs allege Defendants similarly monopolized adjacent fields, such as the school apparel and graduation regalia markets.[8] See, e.g., id. at 104–05, ¶255. But Plaintiffs concentrate their Complaint on Defendants' dominance in the competitive cheer market. See generally id. And while the complaint passingly refers to the non-cheer markets in discussing harm to the proposed classes (see, e.g., id. at 105–06, ¶262), Plaintiffs' specific allegations of harm relate almost exclusively to the competitive cheer market. See id. at 106–08, ¶257.

## B.   The Procedural Background

Although Plaintiffs have filed only the present lawsuit, other plaintiffs have filed similar lawsuits in three other federal district courts. Those other cases have all made their way to the Western District of Tennessee, where they are now pending as one consolidated action. Because the procedural histories of those cases impact the Court's analysis, the Court first reviews those procedural

---

[8] Plaintiffs also allege that Defendants have so comprehensively occupied these markets that Defendants can now offer themselves as a "one-stop-shop" for all things scholastic and interscholastic. See Doc. No. [1], p. 90, ¶ 237.

histories chronologically and then discusses the procedural history of and arguments in the Motion to Transfer.

### 1. Procedural History: Timing of the Cases

On May 26, 2020, Fusion Elite All Stars ("Fusion Elite") sued several Defendants[9] in the United States District Court for the Northern District of California (the "N.D. Ca. Case"). N.D. Ca. 4:20-cv-03521-JSW, Doc. No. [1]. Fusion Elite brought the "case on its own behalf and on behalf of a proposed class of similarly situated persons and entities," alleging that the Core Defendants violated federal antitrust laws in a manner injuring Fusion Elite and members of the proposed class. See id. at 5, 9, ¶¶7–8, 17. Specifically, Fusion Elite alleged that the Core Defendants unlawfully established an "anticompetitive scheme" to monopolize the competitive cheer market. See id. at 1–9. The proposed class in the N.D. Ca. Case was:

> All natural persons or entities in the United States that directly paid Varsity or any wholly or partially owned Varsity subsidiary from May 26, 2016 until the continuing Exclusionary Scheme alleged herein ends (the "Class Period") for: (a) registration, entrance, or other fees and expenses associated with participation

---

[9] Specifically, Fusion Elite sued Varsity Brands, Varsity Spirit, VS Fashion & Supplies, and USAF. This group will be referred to as the "Core Defendants."

by an All-Star Team or Cheerleader in one or more All-Star Competitions; and/or (b) All-Star Apparel.

Id. at 12, ¶30. Fusion Elite projected that this proposed class included thousands of parties "geographically dispersed throughout the United States." Id. at 12, ¶32.

On July 2, 2020, Stars and Stripes Gymnastics Academy Inc., d/b/a Stars and Stripes Kids Activity Center ("Stars and Stripes") sued the Core Defendants in the United States District Court for the Eastern District of Pennsylvania (the "Stars and Stripes E.D. Pa. Case"). E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [1]. Stars and Stripes alleged many of the same facts and brought the same claims as Fusion Elite did in the N.D. Ca. Case—indeed, these complaints largely mirrored each other. Compare, e.g., id. at 5–11, ¶¶1–6, 8–17, with N.D. Ca. 4:20-cv-03521-JSW, Doc. No. [1], pp. 4–9, ¶¶1–6, 8–17. Significantly, Stars and Stripes defined the proposed class exactly as Fusion Elite defined the proposed class in the N.D. Ca. Case. Compare E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [1], p. 15, ¶30, with N.D. Ca. 4:20-cv-03521-JSW, Doc. No. [1], p. 12, ¶30.[10]

---

[10] In fact, Stars and Stripes defined the class period as starting May 26, 2016—as Fusion Elite did in its May 26, 2020 complaint—even though Stars and Stripes did not file suit until July 2, 2020.

On July 7, 2020, before the Core Defendants had answered or filed a dispositive motion in the N.D. Ca. Case, Fusion Elite voluntarily dismissed that lawsuit. N.D. Ca. 4:20-cv-03521-JSW, Doc. No. [19].

On July 10, 2020, Fusion Elite and Spirit Factor LLC, d/b/a Fuel Athletics ("Fuel Athletics") sued the Core Defendants in the United States District Court for the Eastern District of Pennsylvania (the "Fusion Elite E.D. Pa. Case").[11] E.D. Pa. 2:20-cv-03390-CFK, Doc. No. [1]. Besides minor edits and the necessary changes from adding Fuel Athletics as a plaintiff and changing venue, this complaint matched the N.D. Ca. Case complaint. Compare id., with N.D. Ca. Case. N.D. Ca. 4:20-cv-03521-JSW, Doc. No. [1].[12]

On July 24, 2020—as the E.D. Pa. Cases were well underway—Plaintiffs filed the present lawsuit. Doc. No. [1]. Plaintiffs' complaint differs from those filed in the N.D. Ca. Case and the E.D. Pa. Cases. Among other distinctions, it names more than the Core Defendants,[13] alleges antitrust violations in arenas

---

[11] The Stars and Stripes E.D. Pa. Case and the Fusion Elite E.D. Pa are, collectively, the "E.D. Pa. Cases."

[12] That includes the class period still starting May 26, 2016.

[13] Specifically, Plaintiffs also sued BSN Sports, Stanbury, Herff Jones, Bain Capital, Charlesbank Capital, VB Holding Co., USA Cheer, Intropia Tours, and Jeff Webb.

10

beyond competitive cheer (see id. at 12, ¶9), brings additional claims absent from the other lawsuits,[14] and proposes several classes (as opposed to the one class proposed in the earlier lawsuits) (id. at 119–22, ¶279).[15]

Yet Plaintiffs' lawsuit resembles the others in several respects. First, although Plaintiffs include distinct Defendants, allegations, and claims, the central features of Plaintiffs' complaint match those in the other lawsuits. For example, Plaintiffs sue the Core Defendants and focus heavily on the competitive cheer antitrust claims. And while Plaintiffs' presentation of the facts is not a verbatim recital of the facts from the earlier complaints, many of the descriptions

---

[14] Whereas the other cases involved only claims under the Clayton Act and Sherman Act, Plaintiffs' case also asserts claims under state and federal iterations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act. Doc. No. [1], pp. 2–3, ¶2.

[15] Plaintiffs propose four classes that allegedly suffered injury from Defendants' actions: an "Independent Event Production Class" that "suffered in the form of a loss of the share of the market in the business of competition event productions"; a "Competitive, College, High School, and Junior High School Parent Class" that "directly or indirectly paid Varsity or any wholly or partially owned Varsity subsidiary . . . enhanced fees" for uniforms, competition fees, and other goods or services; the "Cheer Camp Market Class" that "lost a share of the scholastic and competition cheerleading camp market"; and the "Apparel, Athletic Equipment and Merchandise Class" that "have suffered in the form of a loss of the share of the" apparel, athletic equipment, and cheer merchandise market. Doc. No. [1], pp. 119–22, ¶279. The Competitive, College, High School, and Junior High School Parent Class appears to be the closest analog to the classes proposed in the related lawsuits.

bear uncanny resemblance to statements in those earlier complaints. Compare, e.g., id. at 48, ¶9, with E.D. Pa. 2:20-cv-03390-CFK, Doc. No. [1], p. 24, ¶61.

Returning to the E.D. Pa. Cases, on July 31, 2020, the Core Defendants jointly moved to transfer to the United States District Court for the Western District of Tennessee. E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [5]. They argued that Western District of Tennessee, which encompasses Memphis, is where "nearly all of the witnesses and evidence are located, where the main defendants are headquartered, and where nearly all of the conduct at issue occurred." E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [5-1], p. 4.

Instead of opposing the joint motion to dismiss the E.D. Pa. Cases, plaintiffs in those lawsuits voluntarily dismissed on August 12, 2020. E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [6]; E.D. Pa. 2:20-cv-03390-CFK, Doc. No. [8].[16] Apparently, these plaintiffs were also eager to get to Memphis—the next day they filed a joint complaint in the Western District of Tennessee (the "Fusion Elite W.D. Tenn. Case"). W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [1]. That

---

[16] Judge Chad F. Kenney entered orders dismissing the E.D. Pa. Cases on August 12 (E.D. Pa. 2:20-cv-03277-CFK, Doc. No. [7]) and August 13, 2020 (E.D. Pa. 2:20-cv-03390-CFK, Doc. No. [9]).

complaint differs from those previously filed (and by this point voluntarily dismissed) in the N.D. Ca. Case and the E.D. Pa. Cases only to the extent necessary to incorporate the combined named plaintiffs. See, e.g., id. at 7, ¶7.

On August 25, 2020, yet another lawsuit entered the fray: individual plaintiffs Kathryn Anne Radek, Lauren Hayes, and Janine Cherasaro filed their complaint in the Western District of Tennessee (the "Radek W.D. Tenn. Case"). W.D. Tenn. 2:20-cv-02649-SHL-ATC, Doc. No. [1]. While this complaint did not mirror earlier-filed complaints, it named the Core Defendants, raised the same alleged antitrust violations, and proposed a nearly identical class.[17] See id.

Then, on September 8, 2020, the plaintiffs in the Fusion Elite W.D. Tenn. Case and the Radek W.D. Tenn. Case jointly moved to consolidate their cases, which the plaintiffs alleged contained "substantially similar facts and claims against the same defendants." W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [23], p. 2. On September 18, 2020, Judge Sheryl H. Lipman granted the motion and thereby consolidated the cases into one action (the "W.D. Tenn. Case"). W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [37].

---

[17]  The only difference in this proposed class was designating August 25, 2016—*not* May 26, 2016—as the class period start date.

On October 2, 2020, plaintiffs in the W.D. Tenn. Case filed a consolidated complaint that adopted the form used in the earlier Fusion Elite cases. W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [56]. Following a scheduling conference with the W.D. Tenn. Case parties (see W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [54]), Judge Lipman issued on October 15, 2020 a scheduling order setting discovery and motions deadlines. W.D. Tenn. 2:20-cv-02600-SHL-CGC, Doc. No. [61].

### 2.  *Procedural History: The Motion to Transfer*

In the meantime, on September 4, 2020, Moving Defendants filed their Motion to Transfer. Doc. No. [34]. Plaintiffs responded in opposition on September 18, 2020 (Doc. No. [43]), and Moving Defendants replied on September 22, 2020 (Doc. No. [51]).

Moving Defendants argue that this Court should transfer the case because the W.D. Tenn. Case "involve[s] largely the same factual and legal issues," and litigating these cases in two different districts would be inefficient. See Doc. No. [34-1], pg. 6. Further, Moving Defendants argue that the Western District of Tennessee is a more sensible forum to litigate this case because it is "where the majority of witnesses and evidence are located, where a number of the

14

defendants have their principal places of business, and where a significant amount of the conduct at issue took place." Id.[18] They urge the Court to ignore Plaintiffs' wider scope and insertion of additional claims as a lame attempt to differentiate from the earlier complaints. See id. at 9–10. Additionally, Moving Defendants argue that one Plaintiff was required to bring this lawsuit in Shelby County, Tennessee, pursuant to a forum selection clause in a contract signed with USASF. Id. at 12.[19] Ultimately, Moving Defendants argue, these and other factors subject the case to transfer under 28 U.S.C. § 1404(a).

Plaintiffs respond that thousands of potential class members reside in Georgia, Ms. Haygood resides in Georgia,[20] Defendants conduct business and

---

[18]  Additionally, Moving Defendants argue: (1) to the extent any Defendants are not located in Memphis, they are also no located in Georgia (Doc. No. [34-1], pp. 10–11); and (2) Plaintiffs have connected the lawsuit to Georgia only by adding Ms. Haygood—ultimately just one member of the proposed class—as a named party (id. at 11–12).

[19]  Moving Defendants provide an affidavit attaching the contract at issue, which is a "USASF Company Member Agreement" signed by Plaintiff Rockstar Championships, LLC and USAF. Doc. No. [34-3], pp. 7–12. The term of the contract is May 1, 2019 to April 30, 2020. Moving Defendants speculate that potential members of the proposed classes signed this or a similar agreement (see id. at 4, ¶7) but provide only this executed agreement. As to the forum selection (and choice of law) clause, it states that "[t]he internal laws of the state of Tennessee, without regard to its conflicts of law principles, shall govern this Agreement, and any disputes hereunder shall be heard in the courts located in Shelby County, Tennessee." Id. at 10.

[20]  Plaintiffs appended an affidavit from Ms. Haygood asserting that litigating this case in front of a different court would be inconvenient for her. Doc. No. [43-1], p. 3.

host cheer events in Georgia, the anticompetitive practices on the ground matter more in this lawsuit than activities at corporate headquarters, several Defendants maintain headquarters and operate outside of Memphis, Defendants have the resources to litigate in the Northern District of Georgia, this lawsuit was procedurally the first filed among the lawsuits at issue, the Northern District of Georgia is more convenient to witnesses than the Western District of Tennessee, the Northern District of Georgia is more efficient than the Western District of Tennessee, the Northern District of Georgia is more familiar with the laws at issue, and that the Court should defer to their choice of forum and ignore the forum selection clause. See Doc. No. 43, pp. 9–28.[21]

In their reply, Moving Defendants reiterate that litigating overlapping matters in two districts would waste resources. See Doc. No. 51, p. 2. They further argue that the first-filed rule weighs in their favor because the N.D. Ca. Case and E.D. Pa. Cases were filed before Plaintiffs sued in this action. Id. at 3–4. Moving Defendants also reassert that the forum selection clause applies in this case and

---

[21] Perhaps tellingly, Plaintiffs refer to the non-cheer parties and their markets (e.g., Herff Jones and its scholastic products) only to point out that Plaintiffs sued more than just the Core Defendants. See Doc. No. 43, p. 27. Otherwise, Plaintiffs' response centers on competitive cheer. See generally id.

the § 1404(a) factors favor transfer.[22] Id. at 4–10. The Motion to Transfer is now ripe for review.

## II.   LEGAL STANDARD

Moving Defendants ask the Court to transfer this action to the United States District Court for the Western District of Tennessee. Doc. No. [34]. While the Court will undertake a 28 U.S.C. § 1404(a) analysis, the facts of this case also require the Court to consider the related first-filed rule as well as the forum selection clause at issue. The Court will thus proceed with a review of the controlling law in this order: (1) the first-filed rule; (2) Section 1404(a); and (3) the forum selection clause.

### A.   The First-Filed Rule

When considering whether to transfer an action to a district with related pending cases, a court may first consider whether the first-filed rule bars or compels transfer. Under the first-filed rule, when competing or parallel lawsuits are proceeding in separate courts, the court first having jurisdiction usually should hear the case. Collegiate Licensing Co. v. Am. Cas. Co. of Reading, 713

---

[22]  In doing so, Moving Defendants counter Plaintiffs' arguments, including those concerning convenience of witnesses and parties, location of relevant evidence, and the locus of operative facts.

17

F.3d 71, 78 (11th. Cir. 2013); <u>Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.</u>, 486 F. Supp. 2d 1366, 1368–69 (N.D. Ga. 2007) (citation and quotations omitted). Typically, the presumption lies strongly in favor of keeping or consolidating cases in the forum of the first-filed lawsuit. <u>See</u> <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005).

Federal courts consider three factors in determining whether the first-filed rule should apply: (1) the chronology of the actions[23]; (2) the similarity of the parties involved; and (3) the similarities of the issues at stake. <u>McGarry v. Delta Air Lines, Inc.</u>, 2018 U.S. Dist. LEXIS 222421, *5–6 (N.D. Ga. Nov. 20, 2018)

_____

[23] This chronology factor turns not on when parties initiated or entered a lawsuit but instead on which court first "obtain[ed] possession of the subject of the dispute." <u>McGarry v. Delta Air Lines, Inc.</u>, 2018 U.S. Dist. LEXIS 222421, *7 (N.D. Ga. Nov. 20, 2018). Furthermore, while few courts appear to have considered whether a dismissed case should factor into this chronology analysis, a recent Northern District of Georgia decision found "that a dismissed case is no longer pending for purposes of the [first-filed rule]." <u>Daugherty v. Adams</u>, 2017 U.S. Dist. LEXIS 218131, *29 (N.D. Ga. Mar. 22, 2017); <u>see also</u> <u>Steelers Keys, LLC v. High Tech Nat'l, LLC</u>, 2019 U.S. Dist. LEXIS 208514, at *7 (S.D. Fla. Dec. 3, 2019) ("When a case is voluntarily dismissed, it is not considered the first filed case."); <u>Wallerstein v. Dole Fresh Vegetables, Inc.</u>, 967 F. Supp. 2d 1289, 1293–94 (N.D. Ca. 2013) ("Actions that were previously filed and voluntarily dismissed are no longer pending and are therefore moot for the purposes of the first-to-file rule."). Conversely, some courts have found that if a lawsuit were initiated in one district and then transferred to another district, the operative date remains when the lawsuit was filed, not when it was transferred. <u>See</u> <u>Gould v. Nat'l Life Ins. Co.</u>, 990 F. Supp. 1354, 1360–61 (M.D. Ala. 1998).

(citation and quotations omitted). The first-filed rule does not require identical parties and issues—instead, the court should consider whether the parties and issues substantially overlap. Id. at *6 (citation and quotations omitted).[24]

The first-filed rule "rests on principles of comity and sound judicial administration" and serves "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case pending in another court." Woo v. Nike, Inc., No. 1:10-CV-1018-RWS, 2010 U.S. Dist. LEXIS 38465, 2010 WL 1565526, at *2 (N.D. Ga. April 19, 2010) (quoting Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 603–04 (5th Cir. 1999)). Above all, the first-filed rule should not be applied too rigidly or mechanically, and a court may in its discretion decline to follow the rule if following it would frustrate rather than further these purposes. See Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 628 (9th Cir. 1991); Lockheed Martin Corp. v. L-3 Communs. Corp., 405 F.

---

[24] When comparing putative class action lawsuits in this context, courts typically look at whether the proposed classes overlap even though they have not yet been certified. Baatz v. Columbia Gas Transmission, LLC, 814 F.3d 785, 790–91 (6th Cir. 2016); Nicholson v. Nationstar Mortg. LLC of Delaware, No. 17-CV-1373, 2018 WL 3344408, at *5 (N.D. Ill. July 6, 2018) (stating that when considering the similarity of parties in this context, the court should focus on the putative class members rather than the named class member plaintiffs).

Supp. 2d 1381, 1383 (N.D. Ga. 2005) (stating that a court may give priority to a later-filed action where the balance of convenience tips in favor of the second forum or special circumstances are otherwise present).

In the Eleventh Circuit, "the party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." Manuel, 430 F.3d at 1135. Absent compelling circumstances, the first-filed court should retain the case. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982).

**B.    28 U.S.C. § 1404(a)**

If the Court decides that the first-filed rule is not decisive, it may then turn to the Section 1404(a) analysis to determine whether to transfer. Section 1404(a) states that a district court may transfer a civil action to another district where it might have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Thus, the court must first determine whether the plaintiffs could have filed the lawsuit in the proposed transferee forum. See id.

After determining that the lawsuit could have been brought in the transferee forum, the court moves on to the Section 1404(a) factors. The Eleventh Circuit considers nine factors in evaluating a Section 1404(a) motion to transfer:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Manuel, 430 F.3d at 1135 n.1.[25] Whether the proposed transferee court is presiding over related proceedings is another, possibly decisive, factor to be considered. See Hoffman v. Medquist, Inc., 2005 U.S. Dist. LEXIS 29995, *5, 2005 WL 3095713 (N.D. Ga. Nov. 16, 2005).

The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654–55 (11th Cir. 1993) (reviewing district court's transfer of venue for clear abuse of

---

[25] Some courts in the Eleventh Circuit have combined these considerations into three overarching factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998).

21

discretion). Nevertheless, the court should not disturb the plaintiff's choice of forum unless other considerations clearly outweigh that choice. Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996); Huntley v. Chi. Bd. of Options Exch., 132 F. Supp. 3d 1370, 1372 (N.D. Ga. 2015). Further, the court should not transfer if doing so would result only in shifting inconvenience from the defendants to the plaintiffs. Huntley, 132 F. Supp. 3d at 1372. Finally, the parties seeking transfer bear the burden of establishing that the Section 1404(a) factors weigh in favor of transfer. Id. at 1372.

For example, in one putative class action lawsuit, the court chose to transfer under Section 1404(a) because the case's status as a nationwide class action lawsuit diminished the importance of the plaintiff's choice of forum, related class action lawsuits were pending in the transferee court, and the plaintiff would not suffer prejudice from the transfer. Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358 (M.D. Ala. 1998) ; see also Hoffman, 2005 U.S. Dist. LEXIS 29995 at *7–15 (transferring putative class action because the transferee court: (1) was presiding over three lawsuits involving similar claims, facts, issues, and proposed classes; (1) would be more convenient to the witnesses "alleged to have had the most substantial and influential role in designing and implementing the

scheme alleged by Plaintiffs"; and (3) was the heavily favored venue after weighing the other Section 1404(a) factors).

### C.     The Forum Selection Clause

The Eleventh Circuit enforces forum selection clauses and interprets them liberally to include non-contractual claims if the facts giving rise to the claims developed from the parties' business relationship. See Stewart Org., Inc. v. Ricoh Corp., 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc) (per curium); see also Slater v. Energy Servs. Grp. Int'l, Inc., 634 F.3d 1326, 1328–31 (11th Cir. 2011) (finding that statutory claim fell within scope of clause requiring a certain forum for "all claims or causes of action relating to or arising from" the agreement); NeoMedia Techs., Inc. v. ScanBuy, Inc., No. 1:14-CV-01379-AT, 2014 WL 12323686, at *4 (N.D. Ga. Oct. 31, 2014) ("Although the breadth of a forum selection clause's application depends on the clause's particular wording, such clauses are construed liberally."). Courts in this Circuit will read terms such as "hereunder" broadly to refer to the relationship that has arisen from the contract. Picken v. Minuteman Press Int'l, Inc., 854 F. Supp. 909, 911–12 (N.D. Ga. 1993).[26]

---

[26] Courts in this Circuit routinely find that forum selection clauses with phrasing such as "any claim or controversy arising out of or relating to this agreement" can apply to

When a forum selection clause would allow a transfer to a sister federal court, the court should transfer and not dismiss the case even if the clause would have allowed a party to have filed the case in the state court of the selected forum. Printed Specialties, Inc. v. Multifeeder Tech., Inc., No. 3:09-CV-42-JTC, 2010 WL 11507615, at *1 (N.D. Ga. Mar. 10, 2010) (listing cases) ("Where transfer to another federal court is possible, the proper remedy when a party ignores a forum selection clause is to transfer the case, not to dismiss it."); Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004).[27]

If a court undertaking a Section 1404(a) analysis finds that a forum selection clause applies, the party opposing enforcement of the clause "bears the burden of persuading the court that the contractual forum is sufficiently

---

non-contractual claims. See, e.g., Vickers v. Wells, No. CIV.A. 105CV0930RWS, 2006 WL 89858, at *4 (N.D. Ga. Jan. 11, 2006). That includes clauses that contain merely "arising under" and do not contain additional phrasing such as "or in connection with." Food Mktg. Consultants, Inc. v. Sesame Workshop, No. 09-61776-CIV, 2010 WL 1571206, at *11-13 (S.D. Fla. Mar. 26, 2010), report and recommendation adopted, No. 09-61776-CIV, 2010 WL 1571210 (S.D. Fla. Apr. 20, 2010).

[27] At least one court has observed that allowing for dismissal when the party could have brought the case in the forum's state court would preserve that party's contractual right to choose whether to sue in state or federal court in the chosen forum. Aviation Advantage, Inc. v. Turismo Tony Perez, Inc., No. 1:06-CV-2158-CAP, 2007 WL 9702410, at *4 n.2 (N.D. Ga. Mar. 26, 2007). Overwhelmingly, however, courts transfer the case to the relevant federal court when that avenue is open.

24

inconvenient to justify retention of the dispute." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).

## III.   ANALYSIS

The Court will first undertake a first-filed analysis. Because that analysis is not decisive in this case, the Court will then undertake a § 1404(a) analysis—incorporating discussion of the forum selection clause—to determine whether the balance of considerations compels the Court to transfer this case.

### A.   First-Filed Analysis

Moving Defendants argue that because the N.D. Ca. Case and E.D. Pa. Cases had been filed well before this action was filed, the first-filed rule should work in their favor. See Doc. Nos. [34-1], pp. 7–8; [51], pp. 3–4. Plaintiffs appear to argue that the first-filed rule works in their favor. See Doc. No. [43], p. 13. To determine who is correct, the Court will look to the chronology of the actions, the similarity of the parties, and the similarity of the issues.

The interconnected cases at issue present a curious chronology. While Moving Defendants correctly assert that the N.D. Ca. Case and the E.D. Pa. Cases were filed before this action, they avoid grappling with one admittedly inconvenient fact: The E.D. Pa. Cases were not transferred to the Western District

25

of Tennessee but were instead voluntarily dismissed. At least technically, that matters because <u>Daugherty</u> and other cases cited above have established the rule that a previously dismissed case is not pending for purposes of the first-filed rule. The Court agrees with that general rule. But those courts came to that rule when considering prior cases that had been dismissed and were no longer proceeding in any form. Here, the plaintiffs in the E.D. Pa. Cases voluntarily dismissed after the Core Defendants moved to transfer to the Western District of Tennessee, and then those plaintiffs quickly refiled in the Western District of Tennessee. If anything, those plaintiffs took matters into their own hands and effectively accelerated the motion to transfer.

Given this peculiar procedural history, the Court observes that mechanically applying the <u>Daugherty</u> rule here could risk reaching an ultimate conclusion based in part the fact that plaintiffs in the E.D. Pa. Cases decided not to wait for an order sending them to the Western District of Tennessee. In light of the clear guidance from precedent that a court should not mechanically apply the first-filed rule if doing so would frustrate the ends of the rule, this Court declines to afford much weight to the technical chronology of these interconnected cases. Had the Eastern District of Pennsylvania transferred the

E.D. Pa. Cases,[28] the transferred cases would have been the first-filed cases. The Court will not adhere religiously to the technical chronology when doing so would give significant weight to a procedural oddity that was outside of the Parties' hands. That is especially prudent here because the significance of this chronology pales in comparison to the fairness and efficiency factors that will be discussed later in this Order. In short, given the procedural peculiarities of these cases, the Court acknowledges that the case before it is the first-filed among the pending cases, but it does not afford that fact significant weight.[29]

As to the "similarity of the parties" prong, the first-filed rule does not require the named parties to be identical between the lawsuits at issue. Substantial overlap suffices. Here, the lawsuits have substantial overlap. While the named Plaintiffs are different, they bring their actions on behalf of putative classes. In this context, the overlap between the putative classes matters more

---

[28]  And comparing that district's lack of connection to the cases with the Western District of Tennessee's clear connection to the cases, it appears likely the cases would have been transferred.

[29]  The District of Minnesota also departed from the first-filed rule in a case that had a similar "unusual procedural history"—a party had voluntarily dismissed the first-filed action when it learned that a transfer to another court was imminent, and the party then refiled the action elsewhere. Farm Boy Co-Op & Feed Co., LLC v. Red River Clothing, Inc., 2010 U.S. Dist. LEXIS 23082, *8 (D. Minnesota Mar. 12, 2010) That court found that applying the first-filed rule would not serve the interests of justice. Id.

27

than the lack of overlap between the named plaintiffs and class representatives. At least one of Plaintiffs' proposed classes—the Competitive, College, High School, and Junior High School Parent Class—will significantly overlap with the class proposed in the W.D. Tenn. Case. Plaintiffs' other proposed classes may also overlap.

There is also substantial overlap between defendants in these cases. While Plaintiffs in this case have sued more than the Core Defendants, the mutuality between the cases is strong because the Core Defendants are the sole defendants in the W.D. Tenn. Case. and appear to be the center focus of this lawsuit. Still, with respect to both Plaintiffs and Defendants, the relative lack of mutuality does cut slightly against giving great weight to this prong.

The "similarity of the issues" prong leads to a similar conclusion. While Plaintiffs in this action have presented claims distinct from those in the W.D. Tenn. Case, the central issues still overlap. At its core, each lawsuit is a putative class action bringing antitrust claims that relate to the same or a substantially similar history of alleged activity. Plaintiffs' wider scope does not alter the fact that the meat of their lawsuit comes from the same cut as the W.D. Tenn. Case.

Again, though, the relative lack of mutuality cuts slightly against giving great weight to this prong.

Superficially at least, the factors militate towards applying the first-filed rule. But a party can urge the court not to apply the first-filed rule by presenting compelling circumstances that warrant an exception to the rule. The parties here did not directly argue compelling circumstances—they debated instead over which was the first-filed case. But Defendants effectively presented compelling circumstances through their Section 1404(a) arguments. As will be discussed below, the Court finds Defendants' arguments compelling.

The first-filed rule alone does not compel the Court to retain this case. At nearly every level, a rigid application might keep the case in front of this Court. But such an application would unduly favor formula over substance and more generally not achieve the ends of the rule—fairness and efficiency. The Court will not decide this case on the first-filed rule alone. Thus, the Court turns to the Section 1404(a) test to determine whether transfer is appropriate in this action.

### B.    Section 1404(a) Analysis

In a Section 1404 analysis, the Court first must determine whether Plaintiffs' action could have been brought in the proposed transferee venue—

here, the Western District of Tennessee. 28 U.S.C. § 1404(a). A civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). From the facts alleged in the Complaint, the Court finds that a substantial part of the events giving rise to the claims occurred in Memphis. Accordingly, Plaintiffs could have brought this action in the Western District of Tennessee, which allows the Court to transfer the action to that district.

Next, the Court weighs the Section 1404(a) factors described above. On balance, those factors weigh significantly in favor of transfer.

### 1. *Convenience of the Witnesses*

The convenience of the witnesses—especially the "key witnesses"—is "of great importance to the decision to transfer venue from one forum to another." Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d. 1352, 1356 (N.D. Ga. 2004). Courts typically distinguish between party and non-party witnesses because the latter are less likely to be willing to testify in a forum far from home. See id. But if the parties do not present arguments regarding the convenience of non-party witnesses, the court may focus its analysis on key party witnesses. See Collegiate Licensing Co. v. Am. Cas. Co., 842 F. Supp. 2d 1360, 1366–67 (N.D. Ga. 2012);

30

Ramsey, 323 F. Supp. 2d at 1356–57. And, generally, the moving party must make a specific showing of inconvenience to the witnesses. Electronic Transaction Network v. Katz, 734 F. Supp. 492, 501–02 (N.D. Ga. 1989).

Moving Defendants argue that many potential key witnesses— "employees and former employees [of Defendants] responsible for many of the implicated business operations"—live and work in the Memphis area. Doc. No. [34-1], p. 23. They further specify that Defendant Webb "lives and works in the Western District of Tennessee and is expected to be a key witness at any trial." Id. According to Moving Defendants, "these witnesses and potential witnesses would be inconvenienced by having to travel to Atlanta for trial." Id. Finally, Moving Defendants argue that Plaintiffs have failed to identify any actual key witnesses in the Northern District of Georgia, notwithstanding their inclusion of Ms. Haygood as a party. Id. at 22–23.

Plaintiffs argue that on-the-ground witnesses of the alleged monopolistic activity—such as cheer competitors, athletic directors, and parents of scholar-athletes—"have a story the jury needs to hear." Doc. No. [43], p. 17. They argue that more of these witnesses are in the Northern District of Georgia than in the

31

Western District of Tennessee, citing a source indicating that the latter has fewer colleges. Id. at 17–18.[30]

The Court finds Moving Defendants' arguments more persuasive. This action alleges a decades-long pattern of monopolistic activity. While on-the-ground individuals such as cheer competitors certainly interacted tangentially with Defendants' allegedly unlawful activity, the critical acts and decisions for this type of case are more likely to have been made at the corporate actors' principal places of business. And the individuals who are likely to have witnessed those acts and decisions would also be located there.[31] Here, Moving Defendants have sufficiently shown that the Western District of Tennessee is home to a critical mass of Defendants and potential key party witnesses.[32]

_____

[30] In their reply, Moving Defendants argued that Plaintiffs failed to "identify a single third-party witness, much less one who would be inconvenienced by transferring the case." Doc. No. [51], p. 5.

[31] Even if Moving Defendants have not made a highly specific showing by naming all of those witnesses, their logic remains sound: The lawsuit alleges a monopolistic scheme decades in the making, which occurred through acquisitions, intentional domination of the competitive cheer market, and other actions that likely took place at or near the corporate executive level. To put it another way, this Court agrees that the core actions relating to the alleged unlawful activity are more likely to have been taken (and witnessed) at corporate headquarters in Memphis than at competitive cheer competitions in Atlanta.

[32] Defendants also note that former employees of Defendants are "likely to live or work"

The Court further finds that Plaintiffs failed to identify key witnesses in the Northern District of Georgia. The classes of witnesses alleged to reside here are unlikely to be key in determining whether Defendants conducted unlawful antitrust activity. To be sure, some witnesses of the type Plaintiffs identify may ultimately testify. But if that occurs, Plaintiffs themselves have shown that they can pull from a nationwide roster, presumably including potential witnesses who reside in the Western District of Tennessee. Thus, whereas Defendants have shown that key witnesses to the particular claims at issue reside in the Western District of Tennessee, Plaintiffs have failed to identify key witnesses in the Northern District of Georgia and have indicated that the class of witnesses they identified in the Northern District of Georgia also exists in the Western District of Tennessee.[33]

---

in or around Memphis. Doc. No. [34-1], p. 19. Given the allegations of decades of actions by Defendants, the Court agrees that some key witnesses may be *former* employees of Defendants. The Court agrees that those witnesses are more likely to reside there than in the Northern District of Georgia. Courts have weighed that consideration when evaluating the convenience of witnesses. Cusick v. Sw. Airlines Co., No. 2:08-CV-0650-RRA, 2008 WL 11423962, at *4 (N.D. Ala. Dec. 9, 2008), report and recommendation adopted, No. 2:08-CV-0650-RRA, 2008 WL 11423961 (N.D. Ala. Dec. 29, 2008).

[33] Further, when looking at the nationwide context of this action, Georgia likely does not house a disproportionately significant number of witnesses even in the class of witnesses that Plaintiffs identify. That only further diminishes its relative importance in

And as to Ms. Haygood, courts have discounted the residence of class representatives in putative class actions when there is no indication that the class representative's participation in that lawsuit would be more than minimal. Hoffman, 2005 U.S. Dist. LEXIS 29995 at *11–12. Because Ms. Haygood appears unlikely to know any more about Defendants' alleged monopolistic activity than the next cheer parent, the Court declines to give great weight to her alleged inconvenience in litigating this action outside the Northern District of Georgia.

Importantly, the above shows that transferring this case would not merely shift the inconvenience from one party's witnesses to another. Plaintiffs fail to identify key witnesses in the Northern District of Georgia, so transferring the case away from here logically does not shift that inconvenience. Moving Defendants, on the other hand, have persuaded the Court that a substantial number of their key party witnesses—individuals who had a substantial and influential role in the allegedly unlawful activity—would be employees or former employees likely to reside and work in the Western District of Tennessee. Thus, the Courts finds

---

this case, especially as compared to Memphis, which is home to likely key witnesses as to Defendants' corporate activities.

34

that key witnesses are more likely to be in the Western District of Tennessee, and transferring the action there will alleviate the burden on them.[34]

### 2.    *Location of Documents and Other Proof*

This factor similarly weighs in favor of the Western District of Tennessee. Plaintiffs argue that relevant documents and proof are located nationwide, and that Atlanta's superior airport makes the Northern District of Georgia a more convenient basecamp for this litigation "[t]o the extent witnesses, agents, and attorneys must travel between the venue and the sources of proof." Doc. No. [43], pp. 17–18.

Moving Defendants, on the other hand, assert that most of the key evidence relating to this action are corporate books and documents in or near Memphis. Doc. No. [34-1], pp. 10, 18. They also argue "there is no indication that any relevant documents or sources of proof of liability are located in the Northern District of Georgia." Id. at 18.

---

[34] In addition, the Court recognizes that witnesses likely to testify in this case are just as likely to testify in the W.D. Tenn. Case. Transferring the case would thus help prevent those witnesses not only from traveling to the Northern District of Georgia but also from having to testify as to the same subject matter twice in two different places. In other words, the fact that there are parallel cases amplifies the importance of this prong.

Because the Court projects that Defendants' documents and proof will be more relevant to the claims at issue, the Court gives greater weight to Moving Defendants' argument. As some courts have noted, however, the proliferation of electronic production has diminished the importance of this factor. See Huntley, 132 F. Supp. 3d at 1373–74. This factor thus weighs only slightly in favor of transferring.

### 3.   Convenience of the Parties

The convenience of the parties also supports transfer. While simply shifting inconvenience from Defendants to Plaintiffs is not a valid reason to transfer the case, this prong can favor transfer if the transferee district is home to several parties and the transferor court is home to few or none. See Huntley, 132 F. Supp. 3d at 1374 (noting that several defendants were located in the proposed transferee court and the only party who lived in the transferor district was the plaintiff, who was also the only identified witness who lived in the transferor district). As discussed in the "Convenience of the Witnesses" section, several Defendants and likely many key witnesses operate out of or reside in the Western District of Tennessee. Only Ms. Haygood—an individual the Court finds unlikely to testify as to the core antitrust claims—resides in Georgia. Indeed, the corporate

36

Plaintiffs are based in Oklahoma, which if anything is closer to the Western District of Tennessee than to the Northern District of Georgia. Thus, the Court finds that this factor weighs in favor of transfer.

### 4.    *Locus of Operative Facts*

When considering these Section 1404(a) factors, the Court "must scrutinize the substance of the dispute between the parties" to determine what is relevant, and critical, to the case. See Hoffman, 2005 U.S. Dist. LEXIS 29995 at *13 (citation omitted). That is important to keep in mind when, like here, the parties disagree as to where the locus of operative facts lies. In doing so, Plaintiffs and Moving Defendants also disagree as to what the operative facts are.

Plaintiffs argue that "the operative facts are not primarily concerned with the planning or management which may have taken place in corporate headquarters" but instead relate to "the anticompetitive practices which took place in Georgia, nationwide and caused nationwide harm." Doc. No. [43], p. 23. And in any event, Plaintiffs argue, several Defendants "base their operations outside of Memphis." Id. at 22. They further argue that the locus of operative facts is nationwide because the anticompetitive practices had nationwide effect. Id. at 22–23. Finally, they contend that the Northern District of Georgia is home

to more proposed class members than the Western District of Tennessee. Id. at 23.

For their part, Moving Defendants argue that the locus of operative facts is the Western District of Tennessee because the claims largely arise out of the alleged corporate actions of several Defendants. Doc. No. [34-1], p. 18.  They also reject Plaintiffs' position and argue that that the nationwide effect of Defendants' alleged activity does not render the Northern District of Georgia the comparative locus of operative facts just because more potential class members may live in the Northern District of Georgia. See Doc. No. [51], p. 8.

The Court agrees with Moving Defendants. The lawsuit alleges decades of monopolistic activity by Defendants. The Court finds that if the activities giving rise to the claims at issue were to have emanated from a particular district, it is likely to have been the Western District of Tennessee. To the extent the Northern District of Georgia could be a location of activities giving rise to the claims at issue, it would not be distinguishable from other locations that routinely host competitive cheer competitions and experience the other interscholastic, on-the-ground activity Plaintiffs urge the Court to consider. Even under Plaintiffs'

38

argument, the Western District of Tennessee is a location of that on-the-ground activity, in addition to the principal place of business for several Defendants.

The Court therefore finds that this factor weighs in favor of transfer.

### 5. *Availability of Process to Compel Witnesses*

This factor weighs slightly in favor of transfer. There is no indication that service of process would be more or less difficult in the Western District of Tennessee than it would be in the Northern District of Georgia. Still, because the Court finds that more key witnesses are likely to be in the Western District of Tennessee, the Court believes that transferring will better permit the use of compulsory process to secure live testimony. Yet because the key witnesses in mind are likely to be party witnesses who are presumed more willing to testify, the Court affords this factor little weight.

### 6. *Relative Means of the Parties*

This factor weighs slightly against transfer. Plaintiffs argue that Defendants are established companies with significantly more resources at their disposal than "the average parent." Doc. No. [43], p. 24. And Ms. Haygood, an individual, submitted an affidavit stating that litigating "outside of the Northern

District of Georgia would be both expensive and inconvenient for" her, a fact that bears at least some weight on this factor. Doc. No. [43-1], p. 3.

Defendants counter that the named corporate Plaintiffs are also established companies with ample resources to litigate in the Western District of Tennessee. Doc. No. [34-1], p. 20. Defendants also make the point that the corporate Plaintiffs are not even located in Georgia and so would not suffer if the case were transferred. Id.

These arguments largely cancel each other out. Transferring the lawsuit does not appear likely to create significant additional costs for Plaintiffs. Corporate plaintiffs will have to travel regardless of whether the case is in the Northern District of Georgia or the Western District of Tennessee. And while Ms. Haygood stated that litigating this case outside the Northern District of Georgia would be expensive for her, the Court does not believe that her testimony will be necessary—or at least more necessary than that of any other class member who could replace her in the Western District of Tennessee.[35] Further, because the

_____

[35]  As indicated above, courts tend to minimize the importance of class representatives for reasons such as this one—the conveniences and inconveniences of a person who is not a key witness and ultimately just one among perhaps thousands of class members should not greatly sway the Court's decision whether to transfer such an action.

40

bulk of the witnesses and proof is in the Western District of Tennessee, Plaintiffs would not have to expend as many resources litigating there.

Keeping the case here, however, would force Defendants to bear the expense of transporting proof and witnesses merely because a class representative and perhaps more class members reside here. While Defendants are likely better resourced than Plaintiffs, the Court will not ignore the disproportionate burden that would be levied on Defendants by refusing to transfer the case.

Thus, while Defendants arguably have "greater means," keeping the case in the Northern District of Georgia would generate significant litigation costs that Defendants would disproportionately bear. Transferring, however, would prevent these additional expenses and not create substantial additional burden for Plaintiffs. The Court thus finds that this factor is neutral.

### 7. *Weight Given to Plaintiffs' Choice of Forum*

The Court first discusses the forum selection clause issue, which effectively factors into this prong. The Court then more broadly considers Plaintiffs' choice of forum.

### i.   <u>Whether to enforce the forum selection clause</u>

Moving Defendants argue that the forum selection clause in Plaintiff Rockstar Championships, LLC's agreement with USAF requires the Court to transfer that party's claims to the Western District of Tennessee. Doc. No. [34-1], p. 14–15. They argue that the lawsuit is sufficiently related to the agreement to allow the forum selection clause to control. Id. at 15.[36] They also argue that most of if not all the putative Independent Event Production Class members entered into agreements with similar clauses. Id.

Plaintiffs counter that the clause does not govern the claims in this action because the clause is "limited to disputes both brought under the contract and governable by Tennessee state law." Doc. No. [43], p. 15–16. Plaintiffs alternatively argue that the provision is ambiguous and should be interpreted against Defendants, who drafted it. Id. at 16–17.

As stated above, the Eleventh Circuit interprets forum selection clauses liberally and will read them to control even non-contractual claims if those claims arose from activities that stem from the business relationship between the parties. The provision here states that "any disputes hereunder shall be heard in the

---

[36] Moving Defendants reassert this argument in their Reply, citing Stewart Org. and arguing that the clause here can encompass federal antitrust claims. Doc. No. [51], 4–5.

courts located in Shelby County, Tennessee." Courts have subjected non-contractual claims to similarly worded clauses. And while Plaintiffs argue that the claims do not emanate from the agreement, the Court looks to the weight of authority in this Circuit stating that a claim emanating from the business relationship governed by the contract at issue can be subject to that contract's forum selection clause.

The Court thus finds that the forum selection clause governs Rockstar Championships, LLC's claims and that transfer to the Western District of Tennessee is the appropriate means of enforcing that provision here. The Court also acknowledges Moving Defendants' argument that certain potential class members may have signed agreements with similar provisions. But because the Court has not seen direct evidence of that fact beyond the affidavit Moving Defendants provided, the Court declines to give weight to that argument at this juncture. The Court now moves to consider how to weigh the choice of forum with respect to Plaintiffs not bound by the forum selection clause.

### ii.   Whether give weight to Plaintiffs' choice of forum

Courts typically afford great deference to plaintiffs' choice of forum. Collegiate Licensing Co., 842 F. Supp. 2d at 1368. That is especially true when

plaintiffs file suit in their home forum. <u>Rice v. PetEdge, Inc.</u>, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013). But this factor is not dispositive, especially when the forum has little connection with the operative facts of the lawsuit. <u>Huntley</u>, 132 F. Supp. 3d at 1375. Furthermore, some courts have found that this factor is less important when the case at issue is a class action lawsuit. <u>Koster v. American Lumbermens Mut. Cas. Co.</u>, 330 U.S. 518, 524 (1947) (stating that the home forum of a named plaintiff in a class action is afforded less weight because the plaintiff may ultimately be just one among hundreds of plaintiffs); <u>Gould</u>, 990 F. Supp. at 1358 (stating in a Section 1404(a) analysis that plaintiff's "choice of forum is entitled to less deference when the action is one brought on behalf of a class of persons similarly situation"); <u>see also</u> <u>Estey v. ADT LLC</u>, No. 1:16-CV-03141-AT, 2017 WL 4865460, at *3 n.3 (N.D. Ga. Apr. 28, 2017) (observing that "some courts give little or no weight to the plaintiff's choice of forum in class actions").

Moving Defendants rely on similar authority to argue that the Court should not give significant weight to Plaintiffs' choice of forum. Doc. No. [34-1], p. 21. Plaintiffs essentially argue that their choice of forum is not outweighed by other considerations in this case. Doc. No. [43], p. 26.

The Court declines to give Plaintiffs' choice of forum significant weight. This lawsuit is a putative class action with few singular connections to the Northern District of Georgia. The fact that a class representative lives here is of little importance in a class action. If Plaintiffs had successfully shown that Ms. Haygood was also a key witness, the Court may have given Plaintiffs' choice greater weight. But Plaintiffs failed to make that showing. Moreover, corporate Plaintiffs are also not from Georgia. And the facts that Plaintiffs allege took place in Georgia are the same types of facts that they allege took place nationwide, which minimizes this forum's significance in the lawsuit.

This forum has little connection with the operative facts of the case, and so the Court does not give great weight to Plaintiffs' choice of forum. This factor thus disfavors transfer only negligibly.

### 8.   *Forums' Familiarity with Governing Law*

Moving Defendants argue this factor is neutral because both courts are familiar with the federal laws at issue, and the Georgia RICO statute is essentially identical to the federal RICO statute. Doc. No. [34-1], p. 19. Plaintiffs argue that this Court is better suited to adjudicate this case because it has presided over many antitrust cases and it is more familiar with the Georgia RICO statute. Doc.

No. [43], pp. 24–26. Plaintiffs then provide three-case-long lists demonstrating this forum's experience adjudicating class action, antitrust, and Georgia RICO litigation. Id. at 25–26. They then acknowledge that the Western District of Tennessee "may have comparable experience in class actions and sufficient experience in antitrust cases" but stick to their argument and state that this forum's "experience with Georgia antitrust law tips the balance in favor" of retaining the case. Id. at 26.

Plaintiffs' lists of cases do not convince this Court that its colleagues in the Western District of Tennessee are not imminently capable of presiding over this dispute. Further, as Defendants pointed out, to the extent the Georgia RICO claim survives, the Western District of Tennessee should be plenty capable of identifying its few departures from its federal analog. This factor is neutral.

### 9.    Trial Efficiency and Interests of Justice

"Finally, the Court must consider whether efficiency and the interests of justice weigh in favor of or against transfer." Huntley, 132 F. Supp. 3d at 1375. Courts should evaluate "access to evidence, availability of witnesses, the cost of obtaining witnesses . . . and all other practical problems that make trial of a case easy, expeditious, and inexpensive." Moore v. McKibbon Bros., Inc., 41 F. Supp.

2d 1350, 1357 (N.D. Ga. 1998). As discussed above, these factors weigh in favor of transferring the lawsuit.

Still, Plaintiffs argue that this prong weighs against transferring the case because the Northern District of Georgia adjudicates cases more quickly than the Western District of Tennessee. Doc. No. [43], pp. 27–28. The Court is flattered. But the Court also reaffirms its confidence in its Western District of Tennessee colleagues. The Court does not believe that transferring to the Western District of Tennessee would pose concerns about efficiency, administrative delay, or prejudice.

Additionally, the litigation is in its infancy here. The parties will not have wasted resources on mooted dispositive motions if the case is transferred. In fact, those considerations weigh in favor of transferring because the W.D. Tenn. Case is just now entering its dispositive motions stage. Relatedly, the presence of parallel proceedings in the transferee court pertains to judicial efficiency and can be a decisive reason to transfer. Wilson v. ChoicePoint, Inc., No. 1:05-CV-1604-JOF, 2006 WL 8432437, at *2 (N.D. Ga. Feb. 28, 2006). Transferring this case would allow the same court to consider both cases and would thereby promote uniformity of results and avoid duplicative proceedings. The related proceedings

in the Western District of Tennessee thus add great weight in favor of transfer. And the fact that the Court is already transferring one Plaintiff to that district based on the forum selection clause discussed above further convinces the Court that transferring the entire action is in the best interests of fairness, efficiency, and judicial economy.

After considering all factors, the Court finds that the interests of justice weigh in favor of transferring to the Western District of Tennessee.

### 10.  *Section 1404(a) Analysis Conclusion*

In aggregate, the Section 1404(a) factors weigh heavily in favor of transferring this action to the Western District of Tennessee. Even if the first-filed rule had more convincingly counseled retaining the case, the Section 1404(a) factors likely would have provided the compelling reasons necessary to deviate from the first-filed rule. The first-filed rule's suspect application to this case only enhances how heavily the Section 1404(a) factors weigh in favor of transfer.

The Court understands that Plaintiffs wish to maintain their choice of forum. But the Court cannot ignore that the case centers around alleged acts that are far more likely to have taken place in Memphis than in Georgia. Moreover, these acts were likely taken and witnessed by individuals living in Memphis,

whereas the only significant connections to the Northern District of Georgia are Plaintiffs' choice to file here and the residence of a class representative. And, significantly, several related cases have been consolidated in the Western District of Tennessee.

The Court finds that the factors at issue in this case heavily favor transfer to the Western District of Tennessee.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Moving Defendants' Joint Motion to Transfer Action to the Western District of Tennessee (Doc. No. [34]). Plaintiffs' Motion to Compel Compliance with LR 16.1 NDGa. (Doc. No. [46]) is **DENIED as MOOT**. The Clerk is hereby **DIRECTED** to effectuate the transfer of this action to the United States District Court for the Western District of Tennessee, Western Division, and to **CLOSE THIS CASE**.

**IT IS SO ORDERED** this __27th__ day of October, 2020.

_s/Steve C. Jones_____
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

49